## BREMMERMAN v. GEORGETOWN & T. RY. CO.

(Court of Appeals of District of Columbia.   Submitted April 4, 1921.   De-
cided May 2, 1921.)

No. 3476.

1. **Street railroads ⬅102(1)—Negligent failure to warn pedestrian, appar-
ently unconscious of 'danger, proximate cause of accident.**
   Where it is apparent to a reasonably prudent person that a pedestrian
   is unconscious of the approach of a street car, and that unless his at-
   tention is attracted he in all probability will be killed or injured, the neg-
   ligence of the motorman in failing to give warning of the danger, and to
   arrest the speed of the car, if that is necessary and possible, is the proxi-
   mate cause of the accident.

2. **Street railroads ⬅103(2)—Motorman must exercise care to overcome
   pedestrian's negligence.**
   A street car motorman has the duty of exercising reasonable care to
   overcome the consequences of a pedestrian's negligence, whose peril
   is actually or constructively known to the motorman.

3. **Street railroads ⬅117(11)—Negligence as to pedestrian at fault held for
   jury.**
   In an action for the death of a pedestrian, struck by a street car while
   he was crossing the track diagonally away from the approaching car,
   evidence *held* to entitle plaintiff to have the case submitted to the jury
   on the theory that it should have been apparent to the motorman that
   decedent was not aware of the approach of the car, and therefore did not
   appreciate his peril, so that the failure of the motorman to sound a
   warning or to attempt to check the speed of his car until the accident
   was unavoidable was negligence proximately causing the injury.

4. **Street railroads ⬅93(3)—Motorman must watch tracks for pedestrians.**
   It is the motorman's duty, in running a street car, to watch the track
   ahead of him, and, so far as he is able, to avoid killing or maiming pe-
   destrians.

   Van Orsdel, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Action by Thomas H. Bremmerman, administrator of the estate
of J. Schafer, deceased, against the Georgetown & Tennallytown
Railway Company, a corporation.   Judgment for defendant on a
verdict directed by the court at the conclusion of plaintiff's case,
and plaintiff appeals.   Reversed and remanded.

L. J. Mather, of Washington, D. C., for appellant.

S. R. Bowen and Roger J. Whiteford, both of Washington, D. C.,
for appellee.

ROBB, Associate Justice.   Appeal from a judgment for the defend-
ant, appellee here, upon a verdict directed by the court at the con-
clusion of plaintiff's (appellant's) case, in a suit for the recovery of
damages for the death of plaintiff's intestate through the alleged
negligence of the defendant.

The accident occurred in the afternoon of September 24, 1915,
on Wisconsin avenue, in the District of Columbia, at a point, accord-
ing to the evidence, opposite Shoemaker lane.   This lane, for the

past 30 years, and particularly in the summer months, has been used by pedestrians to quite an extent. The double tracks of appellee run north and south along the avenue, and are crossed diagonally by this lane, which, on the east side of the tracks, is nothing more than a path. A pedestrian, when within 4 feet of the west or outside rail on the south-bound track, could plainly see a car 200 feet away, approaching from the south on the easterly track, and, of course, could be as plainly seen from that car.

On the day in question Mr. Bremmerman, a man 68 years of age, with hearing slightly, though not seriously, impaired, who was thoroughly familiar with that locality, approached the tracks along Shoemaker lane from the west, carrying a bag of cantaloupes. There was a car going north on the easterly track, about two per cent. down grade at that point. Decedent proceeded diagonally across the south-bound track and across the 8 feet separating the two tracks, and was about to step upon the north-bound track, before the motorman of the car, approaching under power, made any attempt either to warn him or arrest the speed of the car. According to one witness, a former conductor who was in the front end of the approaching car:

"There was no signal sounded by the motorman at all until he was within 10 feet of the man, when he hollered and tried to stop at the same time, and that was the first attempt he made to stop the car; the motorman did not attempt to do anything until he was within 10 feet of the man [decedent]; decedent did not look towards the car at all. * * * The car ran about 45 or 50 feet north after striking the decedent. * * * It was on eight points all the way from the car barn out up until he [the motorman] got within 10 feet of the man before he cut it off; that witness saw him cut it off when decedent 'was within say a foot inside of the inside rail when he cut it off'; at the time he stepped over the west rail of the north-bound track, the car was just about 10 feet away; saw decedent from the time he came out of the lane, and he walked across the south-bound track without looking down towards the car, and he walked over the space between the two tracks without looking towards the car; and stepped over the west rail without looking; he never looked at the car at all. * * * He had his back towards the car when the car struck him."

Another eyewitness testified that the motorman sounded the whistle just as decedent was about to step in front of the approaching car. The car was running at a speed of 15 or 20 miles an hour.

The negligence of the decedent being admitted, the sole question for our consideration is whether the last clear chance doctrine is applicable to the facts of this case. In Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270, it was ruled that the negligence of the party injured will not preclude recovery by him, "if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence." This rule was reaffirmed in Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 429, 12 Sup. Ct. 679, 36 L. Ed. 485.

In Capital Traction Co. v. Apple, 34 App. D. C. 559, this court ruled that the motorman on a street railway car has a right to assume that a pedestrian who is apparently conscious of the approach of the car will not attempt to cross the track immediately in front of it. The court further ruled that a railway company, having no ex-

clusive right to the use of those parts of the street occupied by its tracks, and being under obligation to exercise reasonable care for the protection of pedestrians, must, notwithstanding the prior negligence of a pedestrian, take all reasonable precautions to avoid injuring him. And in Washington-Virginia R. Co. v. Himelright, 42 App. D. C. 544, this court said:

"Where the negligence of the defendant, in failing to keep a proper lookout, intervenes between the negligence of the plaintiff and the accident, the negligence of the former may be regarded as the proximate cause of the injury, while the negligence of the latter may be considered as the remote cause or condition. Necessarily, if it is found that the negligence of the plaintiff was merely the remote cause or condition, it cannot be said to have been contributory, since negligence, to be contributory, must be one of the proximate causes."

[1] In the eyes of the law, where it is or should be apparent to a reasonably prudent person that a pedestrian is unconscious of the approach of a car, and that unless his attention is attracted he in all probability will be killed or injured, the negligence of the motorman, in failing to employ the means at his command to give warning of the danger which then is or should be apparent to him, and to arrest the speed of the car, if that be necessary and possible, is the immediate or proximate cause of the accident.

[2] The peril of the pedestrian, if actually or constructively known to the motorman, places upon the latter the duty of exercising reasonable care and prudence to overcome "with consequences of the plaintiff's negligence." Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 555, 558, 11 Sup. Ct. 653, 655, 35 L. Ed. 270. And if the motorman does not use such care and prudence, the consequences may be attributable to his negligence. As was said in Hartley v. Lasater, 96 Wash. 407, 165 Pac. 106:

"Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or the proof of circumstances which will put the one charged to implied notice of the situation."

[3, 4] So, in this case, we think it should have been apparent to a reasonably prudent person, situated as was the motorman on the rapidly approaching car, that the decedent was not aware of the approach of the car, and therefore did not appreciate his peril. The plainest dictates of humanity and common sense demanded the employment by the motorman in these circumstances of the agencies immediately at his command to avoid running down the decedent; but he failed to do anything, either to warn the decedent or arrest the speed of the car, until the accident was unavoidable. It is common knowledge that the crossing and recrossing of street car tracks tends to dull one's sensibility to the ordinary manifestations of danger, while the shrill sound of a whistle may bring a realizing sense of peril. It is the motorman's duty, in running his car, as has been repeatedly stated, to watch the track ahead of him, and, so far as he is able, avoid killing or maiming pedestrians.

In the present case, had he seasonably sounded a warning and the

decedent had given evidence of hearing it, the motorman's duty would have ended and the accident would not have occurred. Had the decedent given no evidence of hearing the alarm thus sounded, and the motorman then had vainly used all reasonable means to check the speed of the car, the accident could not have been attributed to any failure of duty on the part of the motorman. He, however, did neither, and we therefore are of opinion that the court erred in directing a verdict for the defendant; the question of whether the motorman was guilty of negligence, and, if so, whether that negligence constituted the proximate cause of the injury, being for the jury.

The judgment is reversed, with costs, and the case remanded for a new trial.

Reversed and remanded.

VAN ORSDEL, Associate Justice (dissenting). The negligence of the deceased is conceded. Should the jury find that the railway company was negligent in the operation of the car, it would make out, at most, a case of concurring negligence, upon which there could be no legal recovery.