## PANHANDLE & SANTA FÉ RY. CO. v. NAPIER.

### No. 3679.

Court of Civil Appeals of Texas. El Paso.

May 19, 1938.

Rehearing Denied June 9, 1938.

Terry, Cavin & Mills, of Galveston, Collins, Jackson & Snodgrass, of San Angelo, and W. C. Jackson, of Fort Stockton, for appellant.

Silliman & Bullock, Hart Johnson, and Travers Crumpton, all of Fort Stockton, for appellee.

WALTHALL, Justice.

At about midnight of the night of December 10, 1934, a Ford automobile, driven by appellee, collided with one of appellant's engines at a public highway crossing near the town of McCamey, in Upton County, Texas, in which collision appellee received injuries, and from damages therefor awarded him by a jury and judgment based on the verdict, appellant prosecutes this appeal.

The following statement is made from appellee's evidence, and the unquestioned evidence of others, as to what occurred immediately preceding and at the time of the collision:

Appellee, then living in the town of Fort Stockton, together with a young lady and another young couple, after having made a Sunday afternoon's visit to Rankin and McCamey, Texas, appellee driving the automobile in which the four were riding, proceeded along the highway from McCamey toward Fort Stockton, Texas, at about 12 o'clock at night, driving a Ford two-door sedan. The highway upon which they were traveling, after leaving McCamey and about 800 feet before it crosses the railroad track at which the collision occurred, bends toward the railroad track in a long, easy and practically

uniform curve, changing its direction from east-west to north-south over a distance of about 700 feet. From a point about 100 feet from the railroad track and up to and across the railroad track the road is straight, and it approaches and intersects the railroad track at approximately right angles. As the road approaches the railroad crossing from the south it is practically level, and there is no appreciable difference between its elevation and that of the railroad track. The view of the railroad track for over 1200 feet west of the crossing (from which direction the train was coming) is clear and unobstructed at every point along the highway between its intersection with the railway and a point more than 800 feet back to the south and east. As the appellee approached the railroad crossing at the time and place of the collision, from the time he was within some 700 feet to 800 feet of the crossing there was nothing to obstruct his view of the crossing, or any part of the railroad track, for more than 1200 feet west of the crossing.

Traveling along the highway approaching the railroad crossing at not over 20 miles per hour, driving his automobile with good headlights burning, with good brakes in operation, appellee's automobile came in collision with appellant's engine, the automobile striking the drive-wheels of the engine or eccentric rod near the center of the engine 50 feet and 3 inches back of the tender. The tender preceded the engine as the train was backing over the highway at the time of the collision.

Appellee testified that he knew of the railroad crossing the highway at that point; that immediately before the collision the crossing was clear; that he could see white posts on the other side of the track; that just before he reached the crossing something black ran out in front of him and that he (his automobile) struck it; that at the time and place he looked and listened for the approach of a train and saw no lights except the lights on his automobile; others in the automobile testified that the engine and train had no lights thereon, and they did not hear the ringing of a bell or blowing of a whistle. Appellee testified that the highway was black asphalt and that the engine he struck was black.

The above is intended to state only in substance the general facts present at the time of the collision and injury to appel-lee. We state the evidence more fully under the assignment to which it refers.

## Opinion.

Appellant's train involved in the collision was a freight train consisting of a freight engine, a caboose and five tank cars of gasoline. At the time and place of the collision the train was in reverse or backing across the highway; in backing the train the tender preceded the engine and the tank cars followed the engine. At the time of the collision the tender, apparently, had passed over the greater portion of the highway, and the engine was entering upon and was passing over the highway.

The court submitted to the jury to find on the issue of discovered peril, and on that issue the jury found against appellant.

The facts on the issue of discovered peril submitted for the jury's findings are substantially as follows: Was appellee in a position of danger and peril immediately before the collision; did appellant's employees in charge of the train discover the perilous situation of appellee in time to have avoided the collision by the use of means at their command, consistent with the safety of the train and the employees thereon; was the failure to avoid the collision by the use of the means at the command of appellant's employees' act negligence and a proximate cause of the collision and appellee's injuries.

The jury answered yes to each of the above inquiries.

The evidence offered on the above issues of fact is extensive, covering that offered on two former trials. The evidence this Court can consider is that tending to sustain the jury's findings on the trial from which this appeal is prosecuted.

D. A. Tims, the fireman on appellant's train involved in the collision, and from whose testimony appellee quotes in his brief, testified, in answer to questions: that appellee's car was "headed right towards me. I could just see the lights: knew that there was a crossing there that this car had to cross; think it was a dark night, won't be positive about the moon shining, but, of course, any night is dark; a light (the cab light) will blind you some, that is, if you are looking right at it and then look out; could see the crossing; could see nothing except the

street crossing sign, could see the road; didn't test the distance how far I could see it, but could see the crossing before I could see the car; could see the crossing before I could see the car, or did see the car lights;" when witness saw the crossing and the car lights the distance looked to witness about '50 or 60 feet "that we were from the crossing when I looked up and saw the car lights."

"Q. And you were both approaching the same crossing? A. I presume it was. It was headed that way.

"Q. You knew that he had to cross it there? A. No, sir, but he was headed that way.

"Q. And you were approaching it at the same time? A. Yes, sir."

Witness then testified as to lights on the train—said it had no headlights or white light on the rear, only a brakeman's light. The engine had no headlights or white light on the rear; there was no light casting a reflection down the track, only a red light. Then proceeding:

"Q. Then what did you do when you saw? A. When I saw that car coming around the curve?

"Q. Yes. A. I did not do anything.

"Q. You didn't ring the bell, did you? A. No.

"Q. You didn't blow the whistle, did you? A. No.

"Q. You didn't warn the engineer and tell him that a car was approaching from the south? A. No.

"Q. Knowing that that car was approaching the same crossing that you were approaching, and that you had no lights on the back end of it, yet you didn't blow the whistle, or cause it to be blown or slacken the speed of the train or try to stop it? A. No; I never said anything to the engineer until I heard something.

"Q. There was nothing to obstruct your vision, to keep you from seeing that car as it approached? A. No, sir, not a thing. It shone right in my face."

Witness testified that he had a bell cord so he could ring the bell; that the bell cord was close to him, right over him; that he could have called to the engineer to hold the train. Fireman Tims said: "At no time before the collision occurred did I see that automobile in such a position on the road that it looked to me like it was about to run into the train; I did not see anything whatsoever, either in the way the train was moving or the way the automobile was moving which suggested to me that that car was about to run into the train."

The engineer did not testify on the trial, but by agreement of the parties his testimony on a former trial was put in evidence. To the question: "You saw him coming down toward that track," referring to appellee and the crossing in question. "A. Yes, sir." "Q. At the time you saw that man what did you do? A. I didn't do anything."

Miss Lorene Pfeister, riding on the front seat with appellee who was driving the car, testified: Was looking ahead; did not see anything of a train on the track; as we came up to the track something black just shot out in front of us and we hit it. The car had good lights and they were turned on; saw the engine just before we hit it. The distance of the automobile from the train when witness first saw the train was not more than 10 or 15 feet; the first she saw of the train was the driving wheels of the engine right in the glare of the automobile headlights; did not see the tender. Witness did not have time to warn appellee it all happened so quick.

Miss Lillian Johnson was riding on the back seat of the car; saw nothing until after the car brakes were applied, and then saw the drive-wheels of the engine.

Charlie Gregory, riding on the back seat of the car, in answer to question: "Did you see the train before the collision?" said, "It just popped up in front of us. I don't know how far it was, if I guess would say 20 to 30 feet."

Appellee testified: Saw something black come in front of him and put on his brakes; was going about 15 miles an hour, not over 20; knew the track was there after he got around the curve; was not driving over 20 miles an hour; wasn't over 15 feet when he first saw the train; it might have been less; applied his brakes, and if he had had about 5 feet more could have stopped; as soon as he saw something in the road appeared before him he started trying to stop.

T. C. Chambers, a brakeman, riding on the stirrup of the engine tender on the north side of the train, testified: First saw the car light as it went into the curve; watched it until view was obscured

by south side of the engine tank, car then about 100 feet away; train was about 100 feet of the crossing; couldn't tell how fast car was traveling; there was nothing that caused witness to believe it was likely the car would hit the train; gave the engineer no signal; didn't think there was any occasion to give him a signal.

Our courts have uniformly held that a person is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him. In Galveston, H. & S. A. Ry. Co. v. Wagner, 298 S.W. 552, Judge Harvey, speaking for the Commission of Appeals, said (page 553): "Whenever it reasonably appears to a second person, from facts and circumstances within his knowledge, that a person is pursuing such a course and probably will pursue it to the end, * * the second person is held to have knowledge of the peril of the other," and referred to a number of cases from the Supreme Court of this State as so holding, among them, Houston, E. & W. T. R. Co. v. Kopinitsch, 114 Tex. 367, 268 S.W. 923; Texas & Pacific R. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410; Houston & T. C. R. Co. v. Finn, 101 Tex. 511, 109 S.W. 918, and other cases noted.

Now, what are the facts in the instant case, if any, that make applicable the principle of law announced by Judge Harvey in the above case, and the cases to which he refers, as applying to issues of discovered peril generally.

We have stated the evidence, and will refer to it only briefly here.

We have in this case a freight train backing over a public highway, the freight train lighted, presumably, as freight trains usually are. The trainmen know and saw the highway crossing; the time is about midnight on a dark night. The train crew at the time and place of the collision consists of two brakemen, a fireman and an engineer. Two of the trainmen saw the light of the automobile on the highway as it was coming toward the railroad crossing. One fireman from his position on the engine, saw the headlight of the automobile as it was approaching the same crossing the train was, it shone right in his face; the train and the automobile at that time were about the same distance from the crossing; the distance from the crossing looked to the fireman "to be about fifty or sixty feet" away. None

of the trainmen did anything to avoid the collision. As quoted from the testimony of the fireman, he saw nothing that suggested to him that the automobile "was about to run into the train."

Appellant refers to the cases of Galveston, H. & S. A. Ry. Co. v. Price, Tex. Com.App., 240 S.W. 524; San Antonio & A. P. Ry. Co. v. Singletary, Tex.Civ. App., 251 S.W. 325; Shannon v. Horn, Tex.Civ.App., 92 S.W.2d 1090; Texas & Pac. Ry. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410, and other cases to sustain its contention that to sustain a recovery upon discovered peril the evidence must justify a finding that appellant actually discovered that appellee was in danger (in actual peril), and that such discovery was made in such time that the trainmen, by the means at hand, could have avoided the collision. Appellant insists that the evidence tending to establish such facts is purely circumstantial and does not show the facts necessary to be shown to sustain the jury's finding and the court's judgment.

As contended by appellant, the law announced by the courts on issues of discovered peril has no application in the absence of actual knowledge on the part of the one inflicting the injury, of the peril of the party injured, in time to avoid the injury by the use of the means at hand. The new duty to avoid the injury is imposed only when actual knowledge of the peril of the injured party is realized by the party inflicting the injury in time to avoid the injury by the use of the means at hand. The issues arising in a case of discovered peril may be, and are usually proved, if proved at all, by circumstantial evidence.

In the case before us the direct evidence of the fireman clearly shows that the fireman from his place on the engine saw the light of the automobile as it was approaching the crossing of the railroad track and the highway, the train and the automobile, each at about the same distance from the crossing, and each moving to the crossing where the collision occurred. It is also shown by the evidence of the fireman how the engine and other parts of the train were lighted. The issues of fact to be shown by the attending circumstances, and to be found by the jury were, whether the fireman realized that the appellee was in danger of injury

830

by the train at the crossing, and whether the fireman, by the use of the means at hand, could have avoided the collision. The jury found for appellee. We cannot impose a finding contrary to that of the jury.

■ As said by the court in San Antonio & A. P. Ry. Co. v. Singletary, Tex.Civ. App., 251 S.W. 325, the doctrine of discovered peril defeats contributory negligence on the part of the injured party when the danger arising therefrom is actually discovered by the party causing the injury, and may be averted by the means at hand.

We have considered other propositions presented and they are overruled.

The case is affirmed.