[Civ. No. 12401. First Dist., Div. One. June 17, 1943.]

JOE PAINE, Respondent, v. BANK OF CERES (a Banking Corporation), Appellant.

Dennett & Paul and Herbert E. Paul for Appellant.

Morrison, Hohfeld, Foerster, Shuman & Clark, as Amici Curiae on behalf of Appellant.

Nat Brown and C. H. Hogan for Respondent.

WARD, J.—This is an action for conversion, based upon the sale by defendant bank of plaintiff's cattle under a chattel mortgage. Judgment was rendered in favor of plaintiff and defendant appeals therefrom. The main question for decision is whether the plaintiff mortgagor was in default at the time possession of the cattle was taken under the mortgage.

On November 6, 1940, the plaintiff, Joe Paine, borrowed sixteen hundred dollars from defendant bank, for which he gave his note secured by a chattel mortgage on property, consisting, among other things, of fifty-eight head of dairy cattle and one hundred eighteen tons of hay. The note was payable on demand, with interest, but the parties agreed orally that payments of principal should be made thereon at the rate of $100 a month.

In January of 1941 the bank, at the request of the purchaser of the milk from the Paine herd, agreed to postpone plaintiff's February payment of $100. Early in February, plaintiff, his mother and step-father came into the bank and advised its vice-president and cashier, Arthur L. Harris, that plaintiff had sold some of the mortgaged cattle. Three cows had actually been sold, and plaintiff testified that he so advised Mr. Harris. The latter testified that plaintiff gave the number as two. The bank agreed that it would not take any action in the matter if plaintiff would thereafter "tend to business" and properly look after the cattle. On February 11, 1941, plaintiff's mother advised Mr. Harris that plaintiff could not be located and that the cattle were without feed.

Mr. Harris immediately made a personal inspection of the herd. He testified that ten head had disappeared, and that those remaining were muddy, uncared for, and poor and emaciated for lack of food. He remained on the premises until six o'clock in the evening awaiting plaintiff's return for the milking. When he did not return, Mr. Harris furnished feed and engaged plaintiff's step-father to care for the cattle. Plaintiff testified that he learned that evening through an acquaintance that the bank had taken over the cattle. Mr. Harris testified that on the following day, he made a personal demand upon plaintiff, who had returned, for the payment of the note, advising him that the mortgaged cattle would be sold if the note were not paid. Plaintiff denied that payment of the note had ever been demanded of him, but there is evidence that between the date when his step-father was put in charge and the date of the sale of the cattle, he had made unsuccessful attempts to secure a loan elsewhere. On March 7, 1941, the cattle were sold to the highest bidder, the bank receiving therefor the total sum of $1,810. From this it paid itself the full amount due, $1,556.37. While the balance was held by the bank for plaintiff, several attachments were levied thereon. Plaintiff came into the bank shortly thereafter with the constable, and there is testimony that Mr. Harris handed plaintiff a check for the amount due him; that plaintiff endorsed it; Mr. Harris cashed it, and that plaintiff turned over to the constable cash in the amount of the attachments. Plaintiff testified that he knew he was signing certain checks in favor of creditors but that Mr. Harris told him to sign and pay off the claims.

The appellant contends that respondent was in default; that he must be deemed to have ratified the sale of his cattle by accepting the surplus proceeds therefrom; that in any event there is not sufficient evidence of value upon which to base a judgment, and that the court erred in refusing to give certain instructions.

If plaintiff was not in default in his monthly payments the bank acted without right in proceeding with the sale. While, as stated, the note was payable on demand, it was agreed, which is not disputed, and which subsequent events bear out, that plaintiff was to make monthly payments thereon of $100. Appellant contends that there was no consideration for such an agreement. The evidence indicates that the installment payments were offered and accepted for a time;

that shortly before the alleged conversion and sale, a representative of a milk company, doing business with respondent, requested of the bank a postponement of the February, 1941, payment, to which the bank acquiesced. While the oral understanding relative to such postponement would not be legally binding as a contract, on principles of waiver and estoppel the bank was precluded from reinstating the written obligation without notice to the mortgagor. In other words, the mortgagee, assuming the mortgagor relied upon the postponement, could not treat the mortgage as in default without giving the mortgagor a reasonable opportunity to meet his obligation. The evidence and the factual surroundings show that the mortgagor knew of the postponement and relied thereon.

In reply, the bank does not expressly rely on the above default, nor does it claim to have made a demand upon respondent prior to the date when it took possession of the cattle and placed his step-father in charge. Under the terms of the mortgage the mortgagor agreed to protect and preserve the property in good condition, etc. The mortgage further provided that whether the mortgagor had failed to do any act required therein should be left to the mortgagee's final and conclusive determination. This provision applied also to the question of whether a payment had been made. In the event that there was a decrease in the value of the property the mortgagor agreed to give further security to an extent that would be sufficient to offset the decreased value. There is no evidence that a demand for additional security was made just prior to the sale.

As justifiable grounds for the sale the bank relies primarily upon the decrease and further anticipated decrease in the value of the security. Some of the cattle had been sold without consent of the bank. Whether the number was two or three, whether eight or ten had died or otherwise disappeared, or whether hay which was included as additional security had been sold, were matters of little financial consequence since the sale finally consummated returned to the bank the full amount of the unpaid balance of the loan. By the terms of the mortgage it was not contemplated that the mortgagor would be precluded from instituting an action for conversion of the property. The condition of the cattle, and whether plaintiff had performed the other conditions of the mortgage, were matters for the jury to determine.

Appellant bank contends that there is no evidence as

to the value of the cattle. There is evidence that in January, prior to the sale, yearlings approximated $30 a head; two-year olds, $65 to $70 a head; average milk cows, $85 a head. Considering the cattle sold, those lost through death or otherwise, and that the condition of cattle when the sale took place in March was better than in January, the approximate value of the herd would be greater than the amount arrived at by the jury. There is evidence that the cattle were in fair condition as compared with other cattle in the vicinity.

 In an action for conversion, direct testimony as to the value of each head of cattle is not required if there is sufficient evidence of quality and quantity, so that a reasonable and fair estimate may be made. (65 C.J., p. 115, sec. 207.) Difficulty in ascertaining damages does not relieve a party at fault. (*Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154]; *Overstreet* v. *Merritt,* 186 Cal. 494 [200 P. 11]; *Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158 [88 P.2d 698, 89 P.2d 386].) If the amount of damages fixed was not accurate it was an "approximation to accuracy" (*Slater* v. *Pacific American Oil Co.,* 212 Cal. 648, 654 [300 P. 31]), which is sufficient. The record here disclosed that the amount assessed was lower than the jury should reasonably have fixed. Under such circumstances a reviewing court is not in a position to disturb the amount of the verdict.

 The contention of the bank that the mortgagor, in accepting the proceeds of the sale, ratified the action of the bank, appears at first blush to have merit, but upon examination must be rejected. The question whether plaintiff voluntarily accepted the surplus was not raised by the pleadings, but evidence upon that point was given during the trial. It was one for the determination of the jury, as was the question of whether from all the evidence the surplus was paid to plaintiff or to a constable for the benefit of certain attaching creditors. The bank submitted the following instruction upon this subject, which was refused: "You are further instructed that if you find that after the sale of the said property the said plaintiff, JOE PAINE, accepted any money received in excess of the amount necessary to pay the indebtedness secured by said mortgage he thereby waived any irregularity that might have existed in the taking possession and the selling of the said property and ratified such sale."

The above instruction was erroneous in part. The court may modify or ignore such an instruction. (*Williamson* v.

*Tobey,* 86 Cal. 497 [25 P. 65]; *Hart* v. *Farris,* 218 Cal. 69 [21 P.2d 432]; *Morris* v. *Purity Sausage Co.,* 2 Cal.App.2d 536 [38 P.2d 193].) ▆ A mortgagor may confirm a sale by acquiescence or by receiving the benefit of an amount received in excess of that due under the obligation. (Jones on Mortgages, 8th ed., p. 1016, sec. 2469; *Mausert* v. *Mutual Distributing Co.,* 92 N.J.L. 190 [104 A. 203].) ▆ A mortgagor may not maintain an action for illegal foreclosure if he has knowledge of the surrounding illegal facts and does not protest (*Merritt* v. *Ward,* 113 Ill.App. 208), but it must be shown that his acceptance of the proceeds was with such knowledge of the consequences of his acceptance that an inference, and not a surmise, may be drawn that the mortgagor intended a ratification of the acts of the mortgagee. This is a question of fact for the jury to determine. ▆ The submitted instruction was properly refused. It did not cover the essentials necessary to determine whether a ratification had occurred. (*Mausert* v. *Mutual Distributing Co., supra; Merritt* v. *Ward, supra.*)

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.