[L. A. No. 19716.   In Bank.   Sept. 11, 1946.]

ALFRED CARL ROEDDER, Respondent, v. CLAYTON WM. ROWLEY, Defendant; HOWARD L. LINDSLEY et al., Appellants.

Spray, Davis & Gould and Charles Perry Gould for Appellants.

Tripp, Callaway, Sampson & Dryden and Dewitt Morgan Manning for Respondent.

GIBSON, C. J.—The sole question involved on this appeal is whether an award by a jury of $9,756.56 general damages for injuries to plaintiff, caused by a collision between two trucks, is excessive.

At the time of the accident plaintiff was 41 years old and was engaged in hauling sand and gravel for construction companies, using his own dump truck. When the collision occurred his dump truck turned over and caught fire but he succeeded in extricating himself from the wreckage. Immediately following the accident plaintiff appeared to be dazed and suffering from shock, but he refused to go to a hospital saying he did not think he was hurt. His clothing was torn and people at the scene of the accident noticed a bruise or abrasion on his back. When he arrived at his home, plaintiff complained of a prickly sensation in his back, a headache and a numb feeling in his arm and leg. The following day he consulted his family physician who testified that plaintiff was suffering from a spasm of the back muscles and "lumbo-sacral sprains." During the next few weeks, the doctor administered massage, heat and light treatments to plaintiff's back.

About two months after the accident, plaintiff resumed his work of hauling sand and gravel, but he continued to

suffer from headaches, pains in his back and leg, and numbness in his arm, and was able to work only a few hours a day. Two days after he returned to work he consulted another physician who took X-ray pictures which disclosed that the bony structure of plaintiff's back was abnormally small, "predisposing [him] to a strain injury above that of the average person." He had never experienced any difficulty or suffered pain with his back before the injury. The doctor testified that plaintiff was suffering from a sprain and strain of the muscles and the bony structure of his back, and prescribed complete immobilization of plaintiff's back for a period of four to six months by the use of a cast to quiet "the active inflammatory process," after which further treatment was to be administered to restore the normal movement lost during the period of immobilization. The doctor stated that there were evidences of contusions and bruises on plaintiff's back and other parts of his body, and gave as his opinion that the back injury was due to trauma, and that plaintiff would continue to suffer pain for an indefinite time with or without the suggested treatment.

Plaintiff did not take the prescribed treatment but resumed his work with the dump truck in which work he was engaged at the time of the trial. He stated that although his condition had improved since the accident he still suffered from headaches, numbness in his leg and pain in his back and arm, and that he stopped work whenever he became tired or the pain became unbearable. Before the accident, plaintiff, in addition to driving a truck, had worked at night as a plasterer in order to augment his income. After the accident, he was unable to. work as a plasterer or do any extra work in the evening. In the 10 months' period between the accident and the trial, plaintiff's average monthly income was approximately $200 less than it had been for the 11 months preceding the accident.

■ In a personal injury action, the plaintiff is entitled to recover such damages as will compensate him for the loss incurred up to the time of trial and also the loss reasonably certain to occur in the future. ■ In assessing general damages, the jury should consider all relevant circumstances, including the age and sex of the injured person, his physical condition before and after the injury, the extent, severity and duration of bodily and mental suffering caused by the injury, and any impairment of earning capacity resulting therefrom. Since there is no exact correspondence between money

and physical or mental injury and suffering, the various factors involved are not capable of exact proof in terms of dollars and cents, and the only standard is such an amount as a reasonable person would estimate as fair compensation.

Hence, necessarily, the determination of the amount of damages is, in the first instance, left to the exercise of a sound discretion by the jury, and a verdict will not be disturbed by an appellate court unless it is so grossly disproportionate to any reasonable limit of compensation as shown by the evidence that it shocks one's sense of justice and raises a presumption that it is based on passion and prejudice rather than sober judgment. (*Deevy* v. *Tassi,* 21 Cal.2d 109, 120-121 [130 P.2d 389]; *Loper* v. *Morrison,* 23 Cal.2d 600, 610 [145 P.2d 1]; *Turnipseed* v. *Hoffman,* 23 Cal.2d 532, 535 [144 P.2d 797].)

The trial court concluded, on the motion for new trial, that the amount awarded was not excessive, and its conclusion in that regard is persuasive in determining whether the verdict was based upon passion or prejudice. (*Deevy* v. *Tassi, supra,* 21 Cal.2d 109, 121; *Ostertag* v. *Bethlehem etc. Corp.,* 65 Cal.App.2d 795, 805 [151 P.2d 647].) The evidence showed that plaintiff sustained a serious injury to his back and that the pain, physical discomfort and impaired earning power resultant therefrom were reasonably certain to continue into the future. The question of what may be reasonable compensation in cases of this kind is a matter on which there legitimately may be a wide difference of opinion (*Bellman* v. *San Francisco H. S. Dist.,* 11 Cal.2d 576, 586 [81 P.2d 894]), and we cannot say that the amount awarded by the jury in this case is so large as to indicate that it was the result of passion or prejudice.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.