[Civ. No. 15489. Second Dist., Div. Three. Mar. 11, 1947.]

HENRY J. COOKSEY, Respondent, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

Leo E. Sievert, H. K. Lockwood and Meserve, Mumper & Hughes for Appellant.

Hildebrand, Bills & McLeod and Booth B. Goodman for Respondent.

WOOD, J.—Defendant appeals from a judgment, based upon a verdict of a jury, awarding plaintiff $42,000, as damages for personal injuries sustained by him while he was an employee of the defendant.

The accident occurred March 10, 1945, when plaintiff, who was working as a conductor, fell from a freight car on which he was attempting to set the hand brake. Defendant admitted liability under the Federal Safety Appliance Act, and the only issue before the trial court was the extent of damages.

Appellant contends that the award was excessive, and could have been given only under the influence of passion or prejudice.

At the time of the accident plaintiff was 54 years of age, was in good health, had been employed by defendant 35 years, and was receiving a salary of approximately $500 per month. It was stipulated at the trial that the American Experience Table showed plaintiff's life expectancy to be 17.40 years. The evidence shows that, as a result of the fall, plaintiff sustained a comminuted (fragmented) fracture of the third lumbar vertebra and injuries to the surrounding area, a fractured pelvis, a fractured scaphoid bone of the right wrist, and injuries to his left heel; that he was in the hospital 59 days; that he was placed in a ''body cast'' which was removed a few days later and boards placed under his mattress; that he was fitted with a steel brace to support his back; that at the time of trial he had not recovered, was still wearing the brace, and suffered constant pain. There was medical testimony that plaintiff's condition is permanent, that it will become worse, and that he may develop kyphosis (humpback).

Appellant argues that plaintiff's condition is not permanent, but will improve. Two physicians, who had examined and treated plaintiff after he left the hospital, testified that plaintiff had a severe comminuted fracture of the vertebra, which resulted in a forward displacement of his body; that there had been some bone absorption (degeneration), and only the lapse of time would determine whether kyphosis would develop; that a fracture of the scaphoid bone is a painful injury,

which terminates with permanent disability and pain, stiffness of the wrist and loss of grasping power. One of those physicians testified that X-rays, in evidence as exhibits, revealed a tremendous amount of crushing of the body of the vertebra; that the bone had been more or less exploded, and the forward part of the vertebra had been pushed into the abdominal space; that the injury to the vertebra is permanent, and nothing can be done about it; that an attempt to get to it through the spinal canal would cause a total paralysis, and an abdominal approach is impossible; that a degeneration of the vertebra is going on due to a lack of blood supply which causes small pieces of bone to be absorbed; that as they are absorbed, plaintiff's condition will get worse; that an X-ray taken January 14, 1946, shows no improvement, but on the contrary shows a definite degeneration of parts of the bone; that an X-ray, in evidence as an exhibit, shows a fibrous healing but it is not bone healing; that there was no doubt in his mind that plaintiff's back injury is permanent and he will continue to suffer pain; that if he is "lucky enough," however, to develop a sufficient amount of arthritis above and below the third lumbar vertebra to form a bony ridge his back would not become deformed; and that plaintiff was then apparently free from arthritis. He also testified that the second and third intervertebral discs, above and below the fractured vertebra, were ruptured as a result of the compression caused when the fracture occurred; that eventually the second and fourth discs will have a tendency to angle together, and the second lumbar vertebra will have a tendency to approach the third vertebra which will result in kyphosis; that, even if an intervertebral disc operation were performed and if transplants were put in to take care of the discs, there would not be enough area of support between the front portions of the vertebra to prevent plaintiff developing a very marked kyphosis. He testified further that fracture of the radial scaphoid bone is a disabling type of injury, and he would consider it permanent to a man of plaintiff's age; that it is a foregone conclusion that he will always be in a state of discomfort; that there are two bones in the body, the scaphoid and the oscalcis (the heel bone) which, when broken, give discomfort continuously thereafter; that the scaphoid is so shaped and arranged that, in order to break it, five different bones are injured; that the fracture seems to be healing satisfactorily, but plaintiff will have a painful wrist particularly when he squeezes anything and when he attempts to put his palm down.

A physician, who was appointed by the court to examine plaintiff, testified that he had examined plaintiff two days previously; that nothing would correct the deformity of the vertebra; that the dislocation is forward toward the abdomen; that it will be necessary for plaintiff to wear the brace until the bone becomes solid; that plaintiff was unable to touch or feel with his finger tips; that he (witness) did not know how long plaintiff would have trouble with his heel; that plaintiff limps, and the pain is manifest when the foot is everted or bearing weight, and that the heel will require some study and possibly a shoe correction and physiotherapy.

A physician, called on behalf of defendant, testified that he had examined plaintiff January 15, 1946, (one week before the trial) ; that he did not think there would be total disability to the back, but he thought plaintiff "might have some permanent disability in so far as pain was concerned"; that the weight bearing portion of the vertebra was smashed, but no one could say into how many pieces it was broken; that the displacement of the vertebra will be permanent; that in such an injury the intervertebral discs would be ruptured; that if plaintiff were to go without the brace or remove it too soon he would develop kyphosis; and that the only way it could be determined for a certainty whether there would be degeneration would be to follow the course of the injury for another six months or a year.

Plaintiff testified that after he returned home from the hospital he was confined to his bed most of the time for about two months; that from the time he left the hospital to the time of trial he had returned to the hospital once or twice a month for treatment; that the pain in his back is so great when he takes the brace off that he wears it all day—from the time he arises until he retires; that he can't stand the pain caused when he lies on a soft mattress, and he has slept on an Army cot ever since he returned from the hospital; that when he sits in overstuffed chairs, his body sinks down, and he gets pains in his legs and hips, and can hardly get up; that his back and wrist pain him constantly, and if his hand does not remain straight while he sleeps, the pain awakens him; that his wrist has been swollen ever since the accident; that it bothers him when he eats, and he can hardly cut meat; and that if he does any walking his heel becomes painful.

There was some medical testimony to the effect that plaintiff could perform some kinds of work; that he could perform

duties of a freight conductor, such as sitting at a desk in a caboose and writing train orders and getting on and off steps of a train if not moving; and that he may be able to be a passenger conductor. There was also medical testimony to the effect that it would be hazardous for plaintiff to be a freight conductor; and that if he were a passenger conductor he would experience pain each time he punched a ticket because the pressure of squeezing the punch would be directly over the site of the scaphoid bone. Plaintiff testified that he does not have enough strength in his hand to punch tickets; that he could not hold a pencil long enough, or press it hard enough, to do the writing and make the carbon copies required of a freight conductor; and that to be a freight conductor one has to get on and off moving trains.

There was substantial evidence, as shown above, that plaintiff suffered severe injuries, and that there was a reasonable certainty that the injuries would be permanent. There was also substantial evidence that plaintiff is unable to follow his usual occupation, or any occupation that requires physical strength or activity.

 In personal injury actions, the plaintiff is entitled to recover such damages as will compensate him for the loss incurred up to the time of trial and also the loss reasonably certain to occur in the future. To determine what is a just and reasonable compensation is a difficult task, and one not possible of exact ascertainment. It is the province of the jury to determine and fix the amount of damages. Upon a motion for a new trial, it is the duty of the trial judge to review and weigh the evidence, and then to approve or disapprove the verdict. All intendments are in favor of the correctness of the judgment. In the present case the trial judge denied appellant's motion for a new trial, and one of the grounds upon which the motion was made was that the award was excessive. The jury and the trial judge, having been present when the witnesses testified, were in a position to determine the weight of the evidence. In denying the motion for a new trial, the trial judge, who had the power to set aside the verdict if it was not in accord with the weight of evidence, approved the amount of damages. His ruling, in denying the motion, "is persuasive in determining whether the verdict was based upon passion or prejudice." (*Foster* v. *Pestana,* 77 Cal.App.2d 885, 890 [177 P.2d 54].) It was stated in the case of *Eubanks* v. *Milton G. Cooper & Son, Inc.,* 68 Cal.App.2d 366,

at page 375 [156 P.2d 775] : "The trial court, as a thirteenth juror, considered all of these questions [credibility of witnesses and weight of testimony] on a motion for new trial, as well as the excessiveness of the verdict. That is the proper forum in which to first press that issue and the trial judge, guided by different rules, should there be governed by the facts, weight of the evidence, the justice of the case, and allow only such damages as are commensurate therewith, . . . Appellate courts are prone to uphold the discretion thus reposed in trial judges in so doing." Appellant, in support of its contention that the amount of damages should be reduced, cites cases wherein awards were reduced by reviewing courts. One of the cases so cited is "*Roedder* v. *Clayton Wm. Rowley,* 73 A.C.A. 331," wherein the District Court of Appeal reduced the amount of damages awarded. In that case a petition for a hearing was granted by the Supreme Court, and the verdict of the jury was upheld. In the Supreme Court that case was entitled "*Roedder* v. *Lindsley,*" and is reported in 28 Cal.2d 820 [172 P.2d 353]. The court stated therein, at page 822: "In assessing general damages, the jury should consider all relevant circumstances, including the age and sex of the injured person, his physical condition before and after the injury, the extent, severity and duration of bodily and mental suffering caused by the injury, and any impairment of earning capacity resulting therefrom. Since there is no exact correspondence between money and physical or mental injury and suffering, the various factors involved are not capable of exact proof in terms of dollars and cents, and the only standard is such an amount as a reasonable person would estimate as fair compensation. Hence, necessarily, the determination of the amount of damages is, in the first instance, left to the exercise of a sound discretion by the jury, and a verdict will not be disturbed by an appellate court unless it is so grossly disproportionate to any reasonable limit of compensation as shown by the evidence that it shocks one's sense of justice and raises a presumption that it is based on passion and prejudice rather than sober judgment. (*Deevy* v. *Tassi,* 21 Cal.2d 109, 120-121 [130 P.2d 389] ; *Loper* v. *Morrison,* 23 Cal.2d 600, 610 [145 P.2d 1] ; *Turnipseed* v. *Hoffman,* 23 Cal.2d 532, 535 [144 P.2d 797].) "

The evidence shows that plaintiff sustained serious permanent injuries to his back, resulting in a deformity which

may develop into kyphosis; that it is necessary for him to wear a steel brace; that surgery is impossible; that the grip of his right hand has been greatly weakened; that it is necessary to give further study to the condition of his heel in order to determine the proper treatment for it; that the pain, physical discomfort and impaired earning power will continue in the future, and it is reasonably certain that they will, to a great extent, be permanent. At the time of the injury his salary was about $6,000 annually, and he had a life expectancy of approximately 17 years. Damages must be determined according to the circumstances of each particular case. █ It is true, as appellant asserts, that a consideration of the amounts awarded as damages in previous cases is of value in determining whether an award is excessive, but it is also true that consideration should be given to differences in economic conditions prevailing when the awards were made. For a discussion of the rule that notice may be taken of the differences in the purchasing power of money at different times, and that such notice should be taken in making an award of damages, reference is made to *Foster* v. *Pestana, supra,* 77 Cal.App. 2d 885.

"The question of what may be reasonable compensation in cases of this kind is a matter on which there legitimately may be a wide difference of opinion [citing case], and we cannot say that the amount awarded by the jury in this case is so large as to indicate that it was the result of passion or prejudice." (*Roedder* v. *Lindsley, supra; Foster* v. *Pestana, supra.*)

The judgment is affirmed.

Desmond, P. J., and Shinn, J., concurred.