[Civ. No. 20463. Second Dist., Div. One. Mar. 15, 1955.]

ADAM F. BERGAN et al., Respondents, v. LEONARD D. ORMSBY et al., Appellants.

Gerald F. H. Delamer and Schell, Delamer & Loring and Joseph D. Taylor for Appellants.

Charles R. Thompson and Walter W. Heil for Respondents.

DORAN, J.—This is an appeal from a judgment in a personal injury action following an automobile collision which occurred at the intersection of Robertson and Olympic Boulevards in Los Angeles. A jury brought in a verdict awarding damages as follows: $46,311 in favor of Adam F. Bergan; $61,764 to Mr. Bergan's wife, Anne L. Bergan; and $5,252.80 for Mrs. Bergan's daughter, Ann Shingleton, the latter award being later reduced to $2,252.80.

The accident occurred on September 7, 1951, at about 10:30-11 p. m. on a clear, dry night, and the intersection traffic was controlled by four traffic signals with green, amber and red lights. The plaintiffs, Adam Bergan, age 59, Mrs. Bergan, age 49, and the daughter, Ann Shingleton, age 19 years, were driving south on Robertson Boulevard, en route home from Glendale, in a Hudson five-passenger coupé. There is evidence that before Bergan entered the intersection, the signal for southbound traffic had changed from red to green, and that Bergan had proceeded approximately three-fourths through the intersection, when defendant's Cadillac, going east on Olympic, collided with the right rear of the Bergan car. A disinterested witness driving on Olympic along with and in the same direction as defendant's Cadillac, testified that the Cadillac did not stop for the red light but proceeded into the intersection.

The Cadillac automobile belonged to the defendant De Lange and was being driven by the defendant Ormsby, who, with three friends had attended the races at Del Mar. Ormsby had flown the party from Del Mar to Long Beach; from there the men had taken a taxicab to the Santa Monica Airport to pick up the Cadillac. At the time of the accident Ormsby was driving to the Wilshire Country Club. There was evidence that three of the men in the Cadillac, including the driver Ormsby, had been drinking intoxicating liquor, and that one of the passengers admitted being drunk. No sobriety

tests were given by the police. Ormsby admitted having had two drinks before dinner, prior to the accident.

Appellants "do not contend that there was insufficient evidence to support the judgment had no errors been committed and had there been no misconduct, it is obvious that the question of liability was a close one, the evidence in favor of a finding that Ormsby entered on an amber light being stronger than the contrary evidence. In this situation the errors and misconduct were prejudicial." Appellants' various objections on appeal relate to (1) misconduct of plaintiffs' counsel; (2) erroneous instructions to the jury; (3) errors in rulings on evidence, and (4) excessive verdicts.

It is appellants' contention that plaintiffs' attorney schemed to obtain a verdict not based on evidence as to negligence by "implanting firmly this 'group liquor' idea in the minds of the jury"; that to this end the men were repeatedly pictured as wealthy and drunken "play boys" owning private airplanes, Cadillac automobiles, etc.; that plaintiffs "attempted to hold Ormsby responsible for the liquor consumed by two of his companions"; and that prejudicial error was committed in allowing such matters to be brought into the case during examination and cross-examination of witnesses. Complaint is likewise made in respect to questions concerning possible bribery of police officers, attempts to keep the matter quiet, criticism of the police, the fact the defendants were insured, etc.

Appellants' argument that "the question of liability was a close one," is not borne out by the record. On the contrary there is abundant, substantial evidence in support of the jury's verdict of liability. Disinterested witnesses who saw the accident affirmed that Ormsby entered the intersection against the red light, and that plaintiff Bergan entered with the green light. The trial court at the hearing of the motion for a new trial stated: "it seemed to me at the trial the liability was very clear. I frankly couldn't see any question after hearing all the evidence." Such being the situation, there can be no appellate review of the evidence, and all reasonable presumptions in favor of verdict and judgment must be indulged in.

It is true, as appellants maintain, that Ormsby was not charged with drunk driving. However, there was testimony by a Mrs. Ashley that the driver, Ormsby, "appeared to be under the influence of liquor and it could be smelled," and was "very vague in manner. He was unsteady on his

feet''; the witness saw two men ''lolling'' in the front seat in the manner of men under the influence of liquor. As said in respondents' brief, ''the jury would have a right to assume that it was drinks other than the two he admitted, that explained his (Ormsby) condition as testified to by the witnesses.'' There was other testimony that three of the four men in the Cadillac were intoxicated. Mr. Gibbs, an abstainer, testified to being ''the only occupant of the Cadillac who was not drunk.'' These were pertinent facts surrounding the accident testified to by eyewitnesses, and the record fails to support appellants' assertion that Ormsby was being held responsible for the intoxicated condition of the passengers.

Nor does the record indicate that the verdict was based upon the defendants' wealth or ownership of airplanes and Cadillac cars. Regardless of the defendants' wealth or poverty, the fact remains that there was abundant, credible evidence of negligence in running a red light and bringing about the collision with plaintiffs' car. In this state of the record, appellants' contention that the verdict was based on something other than the evidence, is untenable.

The same may be said in reference to such matters as possible bribery of the police officers, criticism of police activities, insurance, etc. If any error was committed in the admission of evidence or improper reference made to such matters, the same must be deemed harmless since, as respondents say, ''no different result would have been probable if such error, ruling, instruction or defect had not occurred or existed.''

It is alleged that the trial court committed prejudicial error in the giving and refusal of various instructions relating to traffic signals, negligence and contributory negligence, unavoidable accident, conjectural and speculative damages, earning power, and aggravation of preexisting ailment. As pointed out in respondents' brief the instructions given were largely general in nature and taken from the B.A.J.I. book of instructions. As to instructions requested by the defendants, it appears that these were either not required by the evidence or covered by other instructions. In no instance does it appear that any instruction ''erroneously compelled the jury to find that defendant Ormsby was negligent,'' as appellants maintain, or that any prejudice resulted. Reading as an entirety the instructions given by the trial court leads to the conclusion that the appellants' fundamental rights were adequately protected and that the jury could not have been misled at any point.

After citing a number of alleged errors in introduction of evidence, conduct of the trial court and of respondents' attorney, appellants' contention is that since the evidence was very close, and the verdicts excessive, "their cumulative effect is to make the trial unfair to the defendants." As hereinbefore indicated, the evidence as to defendants' liability was not "close," and no adverse "cumulative effect" is apparent.

One of appellants' chief contentions is that the verdicts in favor of Mrs. Bergan of $61,764, and to Adam Bergan of $46,311, "are so excessive as to show the effect of the passion and prejudice introduced into evidence." It appears from the evidence that Mrs. Bergan, 49 years old, had a life expectancy of 21.63 years, had previously been in good health; that as a result of being thrown from the car to the pavement the patient suffered a skull fracture 7 to 8 inches long, remained unconscious for five days, was in a hospital for 14 days, and at home in bed for three or four weeks.

Since the accident Mrs. Bergan has suffered a complete loss of smell and impairment of taste, suffers from depression, extreme nervousness and emotional instability. There was medical testimony that pathological brain changes from the cerebral contusion are permanent, and that nothing can be done for the brain injury, or for the loss of smell or taste. There is also bladder trouble which will require operation. Although Mrs. Bergan had been examined by defense physicians, defendants failed to offer any medical testimony as to the patient's condition.

It cannot justifiably be said that the award of damages was so excessive as to shock the conscience, or to indicate that the jury was swayed by prejudice. The evidence clearly indicates that Mrs. Bergan was very seriously and permanently injured; special damages for doctors, hospital, medical and loss of salary had already amounted to $2,518, with more expenses to follow. Considering the nature of the injuries, pain and suffering already endured, coupled with an unfavorable prognosis for the future, the verdict although large, cannot be termed unreasonable.

The trial court's opinion on the question of excessive damages, when that matter came up on defendants' motion for a new trial, was expressed as follows: "there is nothing that would indicate that the jury was influenced by bias, prejudice, or passion of any kind. As a matter of fact, there is a possibility that if the Supreme Court had not held that additur was not permitted, the Court might be inclined to

add for (to) the verdict for Mrs. Ann Bergan." As said in *Roedder* v. *Rowley*, 28 Cal.2d 820, 822 [172 P.2d 353], and elsewhere: "The trial court concluded on the motion for new trial, that the amount awarded was not excessive, and its conclusion in that regard is persuasive in determining whether the verdict was based upon passion or prejudice."

■ What has been said in reference to the award for Mrs. Bergan will likewise apply to the verdict of $46,311 in favor of Adam Bergan. Mr. Bergan's age was 59, with a life expectancy of 14.74 years, and there was previous good health. The accident resulted in serious and continued injury to Bergan's right arm and shoulder involving ruptured and detached bicep tendons requiring operation and extensive physiotherapy. There was medical testimony that the patient suffered from impaired breathing, emotional disturbance, and a brain injury, in addition to continued trouble with the right shoulder and arm, and inability to lift weights.

Previous to the injury, Mr. Bergan was a traffic manager, responsible for the shipment of $250,000 to $350,000 worth of material per month. As result of the accident this plaintiff was unable to hold down the previous job by reason of physical and nervous impairment, and was demoted to another job. Disregarding any bonuses which Bergan received incidental to the traffic manager position, there was a loss of salary of $150 per month. Bergan had also received a bonus of $2,876.89 during a year period preceding the injury. The evidence discloses substantial evidence showing that Mr. Bergan was seriously and permanently injured and, as said in the respondents' brief, the jury might well infer that plaintiff "was the mere shell of the former Mr. Bergan who has held a key position."

As stated in *Roedder* v. *Rowley*, 28 Cal.2d 820, 822 [172 P.2d 353], "there is no exact correspondence between money and physical or mental injury and suffering, the various factors involved are not capable of exact proof in terms of dollars and cents." Necessarily the determination of the amount of damages is, in the first instance, left to the exercise of a sound discretion by the jury. As said in the Roedder case, "The question of what may be reasonable compensation in cases of this kind is a matter on which there legitimately may be a wide difference of opinion." In the state of the present record, it does not appear that the awards given by the jury are such as to require appellate interference.

A careful examination of the evidence, instructions, conduct

of the trial court and of the attorneys, and of the many assignments of error in connection therewith, fails to indicate that there has been any miscarriage of justice. Under the express provisions of article VI, section 4½, of the California Constitution, and of section 475 of the Code of Civil Procedure, no judgment may be set aside unless, upon an examination of the entire record, it appears that "a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." The burden was upon the appellants to show prejudice. No such prejudicial error is apparent.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 11, 1955, and appellants' petition for a hearing by the Supreme Court was denied May 11, 1955.