[L. A. No. 26201. In Bank. Aug. 17, 1961.]

YETTA SEFFERT, Plaintiff and Respondent, v. LOS ANGELES TRANSIT LINES et al., Defendants and Appellants.

500

Harry M. Hunt and David S. Smith for Defendants and Appellants.

Irving H. Green, Wright, Wright, Goldwater & Mack, John H. Rice and Andrew J. Weisz for Plaintiff and Respondent.

PETERS, J.—Defendants appeal from a judgment for plaintiff for $187,903.75 entered on a jury verdict. Their motion for a new trial for errors of law and excessiveness of damages was denied.

At the trial plaintiff contended that she was properly entering defendants' bus when the doors closed suddenly catching her right hand and left foot. The bus started, dragged her some distance, and then threw her to the pavement. Defendants contended that the injury resulted from plaintiff's own negligence, that she was late for work and either ran into the side of the bus after the doors had closed or ran after the bus and attempted to enter after the doors had nearly closed.

The evidence supports plaintiff's version of the facts. Several eyewitnesses testified that plaintiff started to board the bus while it was standing with the doors wide open. Defendants do not challenge the sufficiency of the evidence. They do contend, however, that prejudicial errors were committed during the trial and that the verdict is excessive.

### There Was no Prejudicial Error on the Issue of Liability

Defendants contend that the court erred in giving instructions on res ipsa loquitur on the ground that the doctrine is inapplicable when, as in this case, the defendant does not possess superior knowledge concerning the accident or when, as in this case, the plaintiff plays an active part in the events leading to it. There is no merit in this contention. ▆▆ Superior knowledge by the defendant is not a prerequisite for the application of the doctrine. (*Leet* v. *Union Pac. R.R. Co.*, 25 Cal.2d 605, 619-620 [155 P.2d 42, 158 A.L.R. 1008]; see

Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 202-204.) ▮ Nor does participation by the plaintiff in the events leading to the accident preclude its application if there is evidence that plaintiff's negligence, if any, was not a proximate cause of the accident. (*Shaw* v. *Pacific Greyhound Lines*, 50 Cal.2d 153, 157 [323 P.2d 391] ; *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 444 [247 P.2d 344] ; see Fleming, Torts, 299.)

▮ Defendants contend that the instruction on res ipsa loquitur erroneously shifted the burden of proof by requiring them to prove that they were not negligent. The instruction stated that if and only if plaintiff was a passenger as defined by prior instructions then "from the happening of the accident . . . an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of defendant. That inference is a form of evidence[1] and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference. . . . In order to meet or balance the inference of negligence, *the defendant must present evidence to show either (1) a satisfactory explanation of the accident, in which there is no negligence on the part of defendant, or (2) such care on the defendant's part as leads to the conclusion that the accident did not happen because of want of care by him, but was due to some other cause, although the exact cause may be unknown.* If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you will find against the plaintiff on that issue." (Italics added.)

Defendants quote the italicized part of the foregoing instruction out of context to support their contention that the instruction shifted the burden of proof. Read as a whole the instructions correctly state the law of California that if defendants are to prevail they must rebut the res ipsa loquitur inference with evidence of as convincing force. (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432, 437 [260 P.2d 63] ; *Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 691 [268 P.2d 1041] ; *Williams* v. *City of Long Beach*, 42 Cal.2d 716, 718 [268 P.2d 1061].)

▮ Defendants also contend that the court erred in failing to caution the jury that the doctrine can be invoked

---

[1]*Cf. Blank* v. *Coffin*, 20 Cal.2d 457, 465 [126 P.2d 868]; McBaine, *Inferences, Are They Evidence*, 31 Cal.L.Rev. 108, 112.

only if the jury finds that the incident occurred as claimed by plaintiff and that plaintiff's negligence was not a contributory proximate cause. (*Hardin* v. *San Jose City Lines, Inc.*, *supra*, 41 Cal.2d 432, 435.) Defendants did not request such a cautionary instruction. Moreover the subject was covered by other instructions.

The court instructed the jury that the doctrine of res ipsa loquitur applies ''if and only in the event'' the jury should find that plaintiff was a passenger. Under the court's definition plaintiff was not a passenger unless she entered the bus when it was reasonably prudent to do so.[2] In effect the instruction stated that the doctrine did not apply if the jury believed that the accident happened as defendants contended. Furthermore, the jury was instructed to return a verdict for defendants if it found that plaintiff was contributively negligent. There is, therefore, implied in the verdict a finding that the accident occurred as described by plaintiff rather than as described by defendants.

There is no merit in defendants' contention that the court committed prejudicial misconduct in conducting the examination of a 9-year-old witness. Because of her tender years the court conducted the initial examination, and, in a sympathetic, impartial, and commendable manner, elicited relevant testimony. Nearly all of the court's questions were asked without objection and defendants were given full opportunity to cross-examine.

None of the other claimed errors on the issue of liability, all minor in nature, has merit.

---

[2]The court stated that the passenger relationship was established ''when: (1) a person who intends in good faith and is prepared to become a passenger, has arrived at a place, which has been designated by custom or notice of the carrier as a site from which the carrier will take on passengers, *and* (2), the person stands alongside or near the probable stopping place of the bus, or approaches and goes toward and arrives close to the entrance doors of the bus standing at the site to receive passengers, or otherwise had indicated to the bus driver her intention to board the bus; *and* (3), the bus driver takes or has taken some action which indicates the immediate acceptance by the carrier of such person as a passenger, and in this respect the stopping by a bus driver of a bus of a carrier, at a site, as site is hereinbefore defined, for the purpose of taking on passengers and the opening by the bus driver of the entrance doors of the bus to receive such persons indicates the willingness, intention and readiness of the carrier to accept such person as a passenger; *and* (3) [*sic*] when it being reasonably prudent so to do the person makes her first contact with the bus in the act of entering it or in any event when she gains entrance to the bus. . . .'' (Italics added.) It is not necessary to decide whether the foregoing instruction defines a passenger too narrowly, for any error in this respect favors defendants.

## The Damages Were Not Excessive

One of the major contentions of defendants is that the damages are excessive. as a matter of law. There is no merit to this contention.

The evidence most favorable to the plaintiff shows that prior to the accident plaintiff was in good health, and had suffered no prior serious injuries. She was single, and had been self-supporting for 20 of her 42 years. The accident happened on October 11, 1957. The trial took place in July and August of 1959.

As already pointed out, the injury occurred when plaintiff was caught in the doors of defendants' bus when it started up before she had gained full entry. As a result she was dragged for some distance. The record is uncontradicted that her injuries were serious, painful, disabling and permanent.

The major injuries were to plaintiff's left foot. The main arteries and nerves leading to that foot, and the posterior tibial vessels and nerve of that foot, were completely severed at the ankle. The main blood vessel which supplies blood to that foot had to be tied off, with the result that there is a permanent stoppage of the main blood source. The heel and shin bones were fractured. There were deep lacerations and an avulsion[3] which involved the skin and soft tissue of the entire foot.

These injuries were extremely painful. They have resulted in a permanently raised left heel, which is two inches above the floor level, caused by the contraction of the ankle joint capsule. Plaintiff is crippled and will suffer pain for life.[4] Although this pain could, perhaps, be alleviated by an operative fusion of the ankle, the doctors considered and rejected this procedure because the area has been deprived of its normal blood supply. The foot is not only permanently deformed but has a persistent open ulcer on the heel, there being a continuous drainage from the entire area. Medical care of this foot and ankle is to be reasonably expected for the remainder of plaintiff's life.

Since the accident, and because of it, plaintiff has undergone nine operations and has spent eight months in various hospitals and rehabilitation centers. These operations involved painful skin grafting and other painful procedures. One in-

---

[3]Defined in Webster's New International Dictionary (2d ed.) as a "tearing asunder; forcible separation."

[4]Her life expectancy was 34.9 years from the time of trial.

volved the surgical removal of gangrenous skin leaving painful raw and open flesh exposed from the heel to the toe. Another involved a left lumbar sympathectomy in which plaintiff's abdomen was entered to sever the nerves affecting the remaining blood vessels of the left leg in order to force those blood vessels to remain open at all times to the maximum extent. Still another operation involved a cross leg flap graft of skin and tissue from plaintiff's thigh which required that her left foot be brought up to her right thigh and held at this painful angle, motionless, and in a cast for a month until the flap of skin and fat, partially removed from her thigh, but still nourished there by a skin connection, could be grafted to the bottom of her foot, and until the host site could develop enough blood vessels to support it. Several future operations of this nature may be necessary. One result of this operation was to leave a defective area of the thigh where the normal fat is missing and the muscles exposed, and the local nerves are missing. This condition is permanent and disfiguring.

Another operation called a débridement, was required. This involved removal of many small muscles of the foot, much of the fat beneath the skin, cleaning the end of the severed nerve, and tying off the severed vein and artery.

The ulcer on the heel is probably permanent, and there is the constant and real danger that osteomyelitis may develop if the infection extends into the bone. If this happens the heel bone would have to be removed surgically and perhaps the entire foot amputated.

Although plaintiff has gone back to work, she testified that she has difficulty standing, walking or even sitting, and must lie down frequently; that the leg is still very painful; that she can, even on her best days, walk not over three blocks and that very slowly; that her back hurts from walking; that she is tired and weak; that her sleep is disturbed; that she has frequent spasms in which the leg shakes uncontrollably; that she feels depressed and unhappy, and suffers humiliation and embarrassment.

Plaintiff claims that there is evidence that her total pecuniary loss, past and future, amounts to $53,903.75. This was the figure used by plaintiff's counsel in his argument to the jury, in which he also claimed $134,000 for pain and suffering, past and future. Since the verdict was exactly the total of these two estimates, it is reasonable to assume that the jury accepted the amount proposed by counsel for each item. (*Braddock* v.

*Seaboard Air Line Railroad Co.* (Fla., 1955), 80 So.2d 662, 665.)

The summary of plaintiff as to pecuniary loss, past and future, is as follows:

| | | |
|---|---:|---:|
| Doctor and Hospital Bills | $10,330.50 | |
| Drugs and other medical expenses stipulated to in the amount of | 2,273.25 | |
| Loss of earnings from time of accident to time of trial | 5,500.00 | $18,103.75 |
| Future Medical Expenses: | | |
| $2,000 per year for next 10 years | 20,000.00 | |
| $200 per year for the 24 years thereafter | 4,800.00 | |
| Drugs for 34 years | 1,000.00 | 25,800.00 |
| | | 43,903.75 |
| Possible future loss of earnings | | 10,000.00 |
| Total Pecuniary Loss | | $53,903.75 |

There is substantial evidence to support these estimates. The amounts for past doctor and hospital bills, for the cost of drugs, and for a past loss of earnings, were either stipulated to, evidence was offered on, or is a simple matter of calculation. These items totaled $18,103.75. While the amount of $25,800 estimated as the cost of future medical expense, for loss of future earnings and for the future cost of drugs, may seem high, there was substantial evidence that future medical expense is certain to be high. There is also substantial evidence that plaintiff's future earning capacity may be substantially impaired by reason of the injury. The amounts estimated for those various items are not out of line, and find support in the evidence.

This leaves the amount of $134,000 presumably allowed for the nonpecuniary items of damage, including pain and suffering, past and future. It is this allowance that defendants seriously attack as being excessive as a matter of law.

It must be remembered that the jury fixed these damages, and that the trial judge denied a motion for new trial, one ground of which was excessiveness of the award. These determinations are entitled to great weight. ■ The amount of damages is a fact question, first committed to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial. They see and hear the witnesses and frequently, as in this case, see the injury and

the impairment that has resulted therefrom. As a result, all presumptions are in favor of the decision of the trial court (*McChristian* v. *Popkin,* 75 Cal.App.2d 249, 263 [171 P.2d 85]). ▮ The power of the appellate court differs materially from that of the trial court in passing on this question. An appellate court can interfere on the ground that the judgment is excessive only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury. The proper rule was stated in *Holmes* v. *Southern Cal. Edison Co.,* 78 Cal.App.2d 43, 51 [177 P.2d 32], as follows: ''The powers and duties of a trial judge in ruling on a motion for new trial and of an appellate court on an appeal from a judgment are very different when the question of an excessive award of damages arises. The trial judge sits as a thirteenth juror with the power to weigh the evidence and judge the credibility of the witnesses. If he believes the damages awarded by the jury to be excessive and the question is presented it becomes his duty to reduce them. [Citing cases.] When the question is raised his denial of a motion for new trial is an indication that he approves the amount of the award. An appellate court has no such powers. It cannot weigh the evidence and pass on the credibility of the witnesses as a juror does. To hold an award excessive it must be so large as to indicate passion or prejudice on the part of the jurors.'' In *Holder* v. *Key System,* 88 Cal.App.2d 925, 940 [200 P.2d 98], the court, after quoting the above from the Holmes case added: ''The question is not what this court would have awarded as the trier of the fact, but whether this court can say that the award is so high as to suggest passion or prejudice.'' In *Wilson* v. *Fitch,* 41 Cal. 363, 386, decided in 1871, there appears the oft-quoted statement that: ''The Court will not interfere in such cases unless the amount awarded is so grossly excessive as to shock the moral sense, and raise a reasonable presumption that the jury was under the influence of passion or prejudice. In this case, whilst the sum awarded appears to be much larger than the facts demanded, the amount cannot be said to be so grossly excessive as to be reasonably imputed only to passion or prejudice in the jury. In such cases there is no accurate standard by which to compute the injury, and the jury must, necessarily, be left to the exercise of a wide discretion; to be restricted by the Court only when the sum awarded is so large that the verdict shocks the moral sense, and raises a presumption that

it must have proceeded from passion or prejudice.'' This same rule was announced in *Johnston* v. *Long,* 30 Cal.2d 54, 76 [181 P.2d 645], where it was stated that it ''is not the function of a reviewing court to interfere with a jury's award of damages unless it is so grossly disproportionate to any reasonable limit of compensation warranted by the facts that it shocks the court's sense of justice and raises a presumption that it was the result of passion and prejudice.'' (See also *Connolly* v. *Pre-Mixed Concrete Co.,* 49 Cal.2d 483, 488 [319 P.2d 343]; *Leming* v. *Oilfields Trucking Co.,* 44 Cal.2d 343, 359 [282 P.2d 23, 51 A.L.R.2d 107]; *Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237, 255 [116 P. 513].)

 There are no fixed or absolute standards by which an appellate court can measure in monetary terms the extent of the damages suffered by a plaintiff as a result of the wrongful act of the defendant. The duty of an appellate court is to uphold the jury and trial judge whenever possible. (*Crystal Pier Amusement Co.* v. *Cannan,* 219 Cal. 184, 192 [25 P.2d 839, 91 A.L.R. 1357].) The amount to be awarded is ''a matter on which there legitimately may be a wide difference of opinion'' (*Roedder* v. *Rowley,* 28 Cal.2d 820, 823 [172 P.2d 353]). In considering the contention that the damages are excessive the appellate court must determine every conflict in the evidence in respondent's favor, and must give him the benefit of every inference reasonably to be drawn from the record (*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.,* 156 Cal. 273, 277 [104 P. 312]).

 While the appellate court should consider the amounts awarded in prior cases for similar injuries, obviously, each case must be decided on its own facts and circumstances. Such examination demonstrates that such awards vary greatly. (See exhaustive annotations in 16 A.L.R.2d 3, and 16 A.L.R.2d 393.) Injuries are seldom identical and the amount of pain and suffering involved in similar physical injuries varies widely. These factors must be considered. (*Leming* v. *Oilfields Trucking Co., supra,* 44 Cal.2d 343, 356; *Crane* v. *Smith,* 23 Cal.2d 288, 302 [144 P.2d 356].) Basically, the question that should be decided by the appellate courts is whether or not the verdict is so out of line with reason that it shocks the conscience and necessarily implies that the verdict must have been the result of passion and prejudice.

 In the instant case, the nonpecuniary items of damage include allowances for pain and suffering, past and future, humiliation as a result of being disfigured and being per-

manently crippled, and constant anxiety and fear that the leg will have to be amputated. While the amount of the award is high, and may be more than we would have awarded were we the trier of the facts, considering the nature of the injury, the great pain and suffering, past and future, and the other items of damage, we cannot say, as a matter of law, that it is so high that it shocks the conscience and gives rise to the presumption that it was the result of passion or prejudice on the part of the jurors.

 Defendants next complain that it was prejudicial error for plaintiff's counsel to argue to the jury that damages for pain and suffering could be fixed by means of a mathematical formula predicated upon a per diem allowance for this item of damages. The propriety of such an argument seems never to have been passed upon in this state. In other jurisdictions there is a sharp divergence of opinion on the subject. (See anno., 60 A.L.R.2d 1331.) It is not necessary to pass on the propriety of such argument in the instant case because, when plaintiff's counsel made the argument in question, defendants' counsel did not object, assign it as misconduct or ask that the jury be admonished to disregard it. Moreover, in his argument to the jury, the defendants' counsel also adopted a mathematical formula type of argument. This being so, even if such argument were error (a point we do not pass upon), the point must be deemed to have been waived, and cannot be raised, properly, on appeal. (*State Rubbish etc. Assn.* v. *Siliznoff*, 38 Cal.2d 330, 340 [240 P.2d 282].)

The judgment appealed from is affirmed.

Gibson, C. J., White, J., and Dooling, J., concurred.

TRAYNOR, J.—I dissent.

Although I agree that there was no prejudicial error on the issue of liability, it is my opinion that the award of $134,000 for pain and suffering is so excessive as to indicate that it was prompted by passion, prejudice, whim, or caprice.[1]

Before the accident plaintiff was employed as a file clerk

---

[1]The award of $53,903.75 for pecuniary loss, past and future, is also suspect. The amount awarded for future medical expenses is $12,196.25 greater than the medical expenses incurred from the time of the accident to the time of trial, a period of nearly two years. The amount awarded for future loss of earnings is $4,500 greater than plaintiff's past loss of earnings. Yet the evidence indicates that plaintiff's medical care has been largely completed and that the future loss of earnings will not exceed the earnings lost by the prolonged stays in the hospital and the rehabilitation center.

at a salary of $375 a month. At the time of the trial she had returned to her job at the same salary and her foot had healed sufficiently for her to walk. At the time of the accident she was 42 years old with a life expectancy of 34.9 years.

During closing argument plaintiff's counsel summarized the evidence relevant to past and possible future damages and proposed a specific amount for each item. His total of $187,903.75 was the exact amount awarded by the jury.

His proposed amounts were as follows:

| | | |
|---|---:|---:|
| Doctor and Hospital Bills | $10,330.50 | |
| Drugs and other medical expenses stipulated to in the amount of | 2,273.25 | |
| Loss of earnings from time of accident to time of trial | 5,500.00 | $ 18,103.75 |
| **Future Medical Expenses:** | | |
| $2,000 per year for next ten years | 20,000.00 | |
| $200 per year for the 24 years thereafter | 4,800.00 | |
| Drugs for 34 years | 1,000.00 | 25,800.00 |
| | | 43,903.75 |
| Possible future loss of earnings | | 10,000.00 |
| Total Pecuniary Loss | | 53,903.75 |
| **Pain and Suffering:** | | |
| From time of accident to time of trial (660 days) @ $100 a day | 66,000.00 | |
| For the remainder of her life (34 years) @ $2,000 a year | 68,000.00 | 134,000.00 |
| Total proposed by counsel | | $187,903.75 |

The jury and the trial court have broad discretion in determining the damages in a personal injury case. (*Johnston* v. *Long,* 30 Cal.2d 54, 76 [181 P.2d 645]; *Roedder* v. *Rowley,* 28 Cal.2d 820, 823 [172 P.2d 353].) A reviewing court, however, has responsibilities not only to the litigants in an action but to future litigants and must reverse or remit when a jury awards either inadequate or excessive damages. (E.g., *Clifford* v. *Ruocco,* 39 Cal.2d 327, 329 [246 P.2d 651] [inadequate award]; *Torr* v. *United Railroads,* 187 Cal. 505, 509 [202 P. 671] [inadequate award]; *Chinnis* v. *Pomona Pump Co.,* 36 Cal.App.2d 633, 642-643 [98 P.2d 560] [inadequate award]; *Bellman* v. *San Francisco H. S. Dist.,* 11 Cal.2d 576, 588 [81 P.2d 894] [excessive award]; *Mondine* v. *Sarlin,* 11 Cal.2d 593, 600 [81 P.2d 903] [excessive award]; *Lindemann* v. *San Joaquin Cotton Oil Co.,* 5 Cal.2d 480, 510 [55 P.2d 870] [exces-

sive award] ; *Phelps* v. *Cogswell,* 70 Cal. 201, 204 [11 P. 628] [excessive award].)

The crucial question in this case, therefore, is whether the award of $134,000 for pain and suffering is so excessive it must have resulted from passion, prejudice, whim or caprice. "To say that a verdict has been influenced by passion or prejudice is but another way of saying that the verdict exceeds any amount justified by the evidence." (*Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237, 254 [116 P. 513] ; see *Doolin* v. *Omnibus Cable Co.,* 125 Cal. 141, 144 [57 P. 774].)

There has been forceful criticism of the rationale for awarding damages for pain and suffering in negligence cases. (Morris, *Liability for Pain and Suffering,* 59 Columb.L.Rev. 476; Plant, *Damages for Pain and Suffering,* 19 Ohio L.J. 200; Jaffe, *Damages for Personal Injury: The Impact of Insurance,* 18 Law and Contemporary Problems 219; Zelermyer, *Damages for Pain and Suffering,* 6 Syracuse L.Rev. 27.) Such damages originated under primitive law as a means of punishing wrongdoers and assuaging the feelings of those who had been wronged. (Morris, *Liability for Pain and Suffering, supra,* 59 Columb.L.Rev. at p. 478; Jaffe, *Damages for Personal Injury: The Impact of Insurance, supra,* 18 Law and Contemporary Problems at pp. 222-223.) They become increasingly anomalous as emphasis shifts in a mechanized society from ad hoc punishment to orderly distribution of losses through insurance and the price of goods or of transportation. Ultimately such losses are borne by a public free of fault as part of the price for the benefits of mechanization. (*Cf. Peterson* v. *Lamb Rubber Co.,* 54 Cal.2d 339, 347-348 [5 Cal.Rptr. 863, 353 P.2d 575] ; *Henningsen* v. *Bloomfield Motors, Inc.,* 32 N.J. 358 [161 A.2d 69, 77, 75 A.L.R.2d 1] ; *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 462 [150 P.2d 436] [concurring opinion].)

Nonetheless, this state has long recognized pain and suffering as elements of damages in negligence cases (*Zibbell* v. *Southern Pacific Co., supra,* 160 Cal. 237, 250; *Roedder* v. *Rowley, supra,* 28 Cal.2d 820, 822) ; any change in this regard must await reexamination of the problem by the Legislature. Meanwhile, awards for pain and suffering serve to ease plaintiffs' discomfort and to pay for attorney fees for which plaintiffs are not otherwise compensated.

It would hardly be possible ever to compensate a person fully for pain and suffering. " 'No rational being would change places with the injured man for an amount of gold

that would fill the room of the court, yet no lawyer would contend that such is the legal measure of damages.' '' (*Zibbell* v. *Southern Pacific Co., supra,* 160 Cal. 237, 255; see 2 Harper and James, The Law of Torts 1322.) ''Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement, and consequently the judge can, in his instructions give the jury no standard to go by; he can only tell them to allow such amount as in their discretion they may consider reasonable. . . . The chief reliance for reaching reasonable results in attempting to value suffering in terms of money must be the restraint and common sense of the jury. . . .'' (McCormick, Damages, § 88, pp. 318-319.) Such restraint and common sense were lacking here.

A review of reported cases involving serious injuries and large pecuniary losses reveals that ordinarily the part of the verdict attributable to pain and suffering does not exceed the part attributable to pecuniary losses. (See 16 A.L.R.2d 3-390; 18 West Cal.Dig., Damages, §§ 130-132.) The award in this case of $134,000 for pain and suffering exceeds not only the pecuniary losses but any such award heretofore sustained in this state even in cases involving injuries more serious by far than those suffered by plaintiff. (See *Leming* v. *Oilfields Trucking Co.* (1955), 44 Cal.2d 343, 358 [282 P.2d 23, 51 A.L.R.2d 107]; *Deshotel* v. *Atchison, T. & S. F. Ry. Co.* (1956), 144 Cal.App.2d 224, 231 [300 P.2d 910]; *McNulty* v. *Southern Pacific Co.* (1950), 96 Cal.App.2d 841, 847 [216 P.2d 534] discussed in Kalven, *The Jury and The Damage Award,* 19 Ohio L.J. 158, 170; *Sullivan* v. *City & County of San Francisco* (1950), 95 Cal.App.2d 745, 758-761 [214 P.2d 82]; *Gluckstein* v. *Lipsett* (1949), 93 Cal.App.2d 391, 398 [209 P.2d 98]; *Huggans* v. *Southern Pacific Co.* (1949), 92 Cal.App.2d 599, 615 [207 P.2d 864].) In *McNulty* v. *Southern Pacific Co., supra,* the court reviewed a large number of cases involving injuries to legs and feet, in each of which the total judgment, including both pecuniary loss and pain and suffering did not exceed $100,000.[2] Although excessive damages is ''an issue which is primarily factual and is not therefore a matter which can be decided upon the basis of awards made in other cases'' (*Leming* v. *Oilfields Trucking Co.,* 44 Cal.2d 343, 356 [282 P.2d 23, 51 A.L.R.2d 107]; *Crane* v. *Smith,* 23 Cal.2d 288, 302 [144 P.2d 356]), awards for similar in-

---

[2]The verdicts in some of these cases were over $100,000 but in each case the award was reduced to $100,000 or less.

juries may be considered as one factor to be weighed in determining whether the damages awarded are excessive. (*Maede* v. *Oakland High School Dist.*, 212 Cal. 419, 425 [298 P. 987]; *McNulty* v. *Southern Pacific Co., supra*, 96 Cal.App. 2d 841, 848.)

The excessive award in this case was undoubtedly the result of the improper argument of plaintiff's counsel to the jury. Though no evidence was introduced, though none could possibly be introduced on the monetary value of plaintiff's suffering, counsel urged the jury to award $100 a day for pain and suffering from the time of the accident to the time of trial and $2,000 a year for pain and suffering for the remainder of plaintiff's life.

The propriety of counsel's proposing a specific sum for each day or month of suffering has recently been considered by courts of several jurisdictions. (See 19 Ohio L.J. 780; 33 So.Cal.L.Rev. 214, 216.) The reasons for and against permitting ''per diem argument for pain and suffering'' are reviewed in *Ratner* v. *Arrington* (Fla.App.), 111 So.2d 82, 85-90 [1959 Florida decision holding such argument is permissible] and *Botta* v. *Brunner*, 26 N.J. 82 [138 A.2d 713, 718-725, 60 A.L.R.2d 1331] [1958 New Jersey decision holding such argument to be an ''unwarranted intrusion into the domain of the jury''].

The reason usually advanced for not allowing such argument is that since there is no way of translating pain and suffering into monetary terms, counsel's proposal of a particular sum for each day of suffering represents an opinion and a conclusion on matters not disclosed by the evidence, and tends to mislead the jury and result in excessive awards. The reason usually advanced for allowing ''per diem argument for pain and suffering'' is that it affords the jury as good an arbitrary measure as any for that which cannot be measured.

Counsel may argue all legitimate inferences from the evidence, but he may not employ arguments that tend primarily to mislead the jury. (*People* v. *Purvis*, 52 Cal.2d 871, 886 [346 P.2d 22]; *People* v. *Johnson*, 178 Cal.App.2d 360, 372 [3 Cal.Rptr. 28]; *Affett* v. *Milwaukee & Suburban Transport Corp.*, 11 Wis.2d 604 [106 N.W.2d 274, 280]; Michael and Adler, *Trial of an Issue of Fact*, 34 Columb.L.Rev. 1224, 1483-1484; cf. *Rogers* v. *Foppiano*, 23 Cal.App.2d 87, 94-95 [72 P.2d 239].) A specified sum for pain and suffering for any particular period is bound to be conjectural. Positing such a sum for a small period of time and then multiplying that sum

by the number of days, minutes or seconds in plaintiff's life expectancy multiplies the hazards of conjecture. Counsel could arrive at any amount he wished by adjusting either the period of time to be taken as a measure or the amount surmised for the pain for that period.

"The absurdity of a mathematical formula is demonstrated by applying it to its logical conclusion. If a day may be used as a unit of time in measuring pain and suffering, there is no logical reason why an hour or a minute or a second could not be used, or perhaps even a heart-beat since we live from heart-beat to heart-beat. If one cent were used for each second of pain this would amount to $3.60 per hour, to $86.40 per twenty-four hour day, and to $31,536 per year. The absurdity of such a result must be apparent, yet a penny a second for pain and suffering might not sound unreasonable. . . . The use of the formula was prejudicial error." (*Affett* v. *Milwaukee & Suburban Transport Corp.*, *supra*, 11 Wis.2d 604 [106 N.W.2d 274, 280].)

The misleading effect of the per diem argument was not cured by the use of a similar argument by defense counsel. Truth is not served by a clash of sophistic arguments. (See Michael and Adler, *The Trial of an Issue of Fact*, 34 Columb. L.Rev. 1224, 1483-1484.) Had defendant objected to the improper argument of plaintiff's counsel this error would be a sufficient ground for reversal whether or not the award was excessive as a matter of law. Defendant's failure to object, however, did not preclude its appeal on the ground that the award was excessive as a matter of law or preclude this court's reversing on that ground and ruling on the impropriety of counsel's argument to guide the court on the retrial. (Code Civ. Proc., § 53.)

I would reverse the judgment and remand the cause for a new trial on the issue of damages.

Schauer, J., and McComb, J., concurred.

Appellants' petition for a rehearing was denied September 13, 1961. Traynor, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.