NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 28 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CITY OF POMONA,

Plaintiff-Appellee,

v.

SQM NORTH AMERICA
CORPORATION,

Defendant-Appellant.

No.  22-55219

D.C. No.
2:11-cv-00167-RGK-JEM

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 14, 2023
Pasadena, California

Before:  BRESS and MENDOZA, Circuit Judges, and ERICKSEN,[**] District
Judge.

After the third trial in this case, the jury found SQM North America

Corporation (SQMNA) liable for importing, distributing, or selling defectively

designed sodium nitrate fertilizer that contaminated the City of Pomona's

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Joan N. Ericksen, United States District Judge for the
District of Minnesota, sitting by designation.

(Pomona) water supply with perchlorate. The jury awarded Pomona $48.1 million in damages for costs that Pomona did and would incur in bringing its drinking water supply into compliance with the maximum contaminant level (MCL) for perchlorate set by the State of California. The district court denied SQMNA's Rule 50(b) renewed motion for judgment as a matter of law and motion for a new trial on multiple grounds. SQMNA appeals, arguing that it is entitled to judgment as a matter of law because there was no evidence of a design defect and that it should be granted a new trial because Pomona's claims are time-barred, Pomona's harm as a bystander was not foreseeable, and the jury's damages award was excessive.

We have jurisdiction under 28 U.S.C. § 1291. We find no error in the jury's finding of liability and therefore reject SQMNA's arguments for judgment as a matter of law and a new trial based on failure to provide evidence of design defect, statute of limitations, and foreseeability. However, because we find error in the district court's denial of SQMNA's motion for a new trial or remittitur based on excessive damages, we vacate the district court's judgment and remand for further proceedings.

We review the denial of a Rule 50(b) motion de novo and the jury's verdict for substantial evidence. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). Arguments not properly raised in a party's pre-verdict Rule 50(a) motion, but

2

raised in the post-verdict Rule 50(b) motion, are reviewed for plain error. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). The denial of a motion for a new trial is reviewed for abuse of discretion; we reverse only if there is no evidence in the record that supports the verdict, or the district court made a mistake of law. *Id.* at 962.

1. SQMNA claims it is entitled to judgment as a matter of law because Pomona did not present any evidence of a design defect, which, according to SQMNA, can be done only through expert testimony. We disagree and find no error in the district court's denial of SQMNA's Rule 50(b) motion.[1]

In a prior appeal, we determined that Pomona must prove its design defect claim under California's risk-benefit test because "the technical and scientific nature of the contamination at issue" was outside the experience of ordinary consumers. *City of Pomona v. SQM N. Am. Corp.*, 694 F. App'x 477, 478 (9th Cir. 2017). Under the risk-benefit test, "expert testimony is proper to assist the finder of fact in deciding if a product is defective." *Howard v. Omni Hotels Mgmt. Corp.*, 136 Cal. Rptr. 3d 739, 757 (Ct. App. 2012). And, where causation is beyond

---

[1] SQMNA raised six new, additional arguments in its Rule 50(b) motion, two of which were preserved on appeal: (1) Pomona's claims are time barred by the statute of limitations, and (2) Pomona failed to show foreseeability. These issues were not properly raised in SQMNA's Rule 50(a) motion, so they are reviewed only for plain error. As discussed below, these arguments fail under the less deferential abuse of discretion standard. So, they also fail under plain error review.

3

common experience, "expert testimony is required to establish causation." *Stephen v. Ford Motor Co.*, 37 Cal. Rptr. 3d 9, 17 (Ct. App. 2005). Because Pomona offered both evidence on design defect and extensive expert testimony on causation, we find substantial evidence supports the jury's verdict and agree with the district court.

To show design defect, Pomona offered deposition testimony from multiple executives from SQM, SQMNA's parent company. The jury could glean from their testimony that while SQM had the ability to produce sodium nitrate fertilizer with less than 0.1 percent perchlorate, it consistently produced fertilizer with "maximum" 0.5 percent perchlorate. Pomona also introduced evidence that sodium nitrate fertilizer produced from the 1930s through the 1950s typically contained between 0.2 and 0.5 percent perchlorate. Pomona thus met its evidentiary burden on the question of design defect by showing—based on admissions from company witnesses—that SQM could have produced fertilizer with perchlorate levels below 0.1 percent but chose not to. Given the nature of the product defect (an excess amount of a harmful chemical) and concessions from the defendant that the jury could construe as strong evidence of an acknowledged design defect, SQMNA has not identified California authority requiring that Pomona additionally provide expert testimony on the question of design defect, as opposed to causation.

And, as required, Pomona presented expert testimony that established causation. Pomona's expert, Dr. Sturchio, testified that 88 percent of the perchlorate in Pomona's groundwater was derived from SQMNA's Chilean sodium nitrate fertilizer. Dr. Sturchio testified that if SQMNA's fertilizer "had roughly 75 percent less perchlorate in it when it was sold, that the amount of perchlorates in Pomona's groundwater would be a lot lower and it would not exceed the MCLs level." This testimony, among other evidence presented at trial, adequately supports the jury's conclusion that SQMNA's fertilizer's design caused the excess perchlorate in Pomona's water.

2. Next, SQMNA argues the district court abused its discretion in denying its motion for a new trial because Pomona's claims are time-barred. But because the district court did not make a mistake of law and there is evidence in the record to support the jury's findings, SQMNA's statute of limitations argument fails.

Under California law, a plaintiff must bring a claim for injury to real property within three years from the occurrence of "appreciable and actual harm." *Davies v. Krasna*, 535 P.2d 1161, 1169 (Cal. 1975); Cal. Civ. Proc. Code § 338(b). Because Pomona filed this lawsuit on October 15, 2010, if Pomona had suffered appreciable harm before October 15, 2007, its claims would be time-barred. But

5

the jury found that Pomona did not suffer appreciable harm to its right to use its water before October 15, 2007, such that Pomona's claim was timely.

The district court did not make a mistake of law in denying SQMNA's motion for a new trial on the statute of limitations issue. SQMNA argues that the "undisputed evidence at trial established that Pomona first 'took . . . steps to investigate, clean up, abate, and/or remediate' perchlorate in its water no later than early 2006." This is a familiar argument, and we reach the same outcome here as we did in *City of Pomona v. SQM North America Corporation* ("*Pomona I*"), 750 F.3d 1036, 1053 (9th Cir. 2014). In *Pomona I*, SQMNA argued that Pomona's pre-2007 treatment of perchlorate barred Pomona's claims. But there, because Pomona presented testimony that any perchlorate treatment was ancillary to its nitrate treatment, we held that there was a triable issue of fact on SQMNA's statute of limitations defense, and that SQMNA could not demonstrate Pomona's claims were time-barred as a matter of law. *Id.* at 1051–53. Here, SQMNA argues that it is entitled to a new trial because Pomona contracted to build water treatment facilities to remove perchlorate before 2007. However, Christopher Diggs, Pomona's Water Resources Director, testified that those facilities were intended to treat nitrate, even though they may have incidentally removed perchlorate. Like in *Pomona I*, SQMNA's argument is based on disputed facts. The district court did not err in leaving that dispute to the jury.

And there is other evidence supporting the jury's finding that the harm began after October 15, 2007. Diggs testified that Pomona's harm began when it became unable to sell its water on October 18, 2007. The jury considered competing evidence—a 2006 letter from Pomona detailing its contract with an engineering firm to treat nitrate and perchlorate, and Diggs's testimony—and found that Pomona did not suffer appreciable harm to its right to use water before the adoption of the MCL in 2007 necessitated perchlorate remediation. Because there was evidence to support the jury's verdict, we agree with the district court that SQMNA is not entitled to a new trial on this ground.

3. SQMNA also moved for a new trial arguing that Pomona was a "bystander," not a "purchaser," meaning that—according to SQMNA—Pomona could recover only if its injury was reasonably foreseeable. And, according to SQMNA, Pomona's injury was not reasonably foreseeable in the 1930s and 1940s, decades before California began regulating perchlorate in drinking water. In denying SQMNA's motion for a new trial, the district court upheld the verdict because the jury may have (1) determined Pomona was not a bystander but a "consumer," or (2) found that Pomona was a bystander, but that the harm was foreseeable. We agree with the district court that SQMNA is not entitled to relief on its foreseeability argument.

First, to the extent that SQMNA argues that Pomona was required to show that the risks of perchlorate contamination were foreseeable, its argument is foreclosed by the law of the case. In *City of Pomona v. SQM North America Corporation* ("*Pomona III*"), we determined that "[u]nder California law, the jury must determine 'through hindsight' whether 'the risk of danger inherent in the challenged design outweighs the benefits of such design.'" 801 F. App'x 488, 490 (9th Cir. 2020) (quoting *Barker v. Lull Eng'g Co.*, 573 P. 2d 443, 454 (Cal. 1978)). We further recognized that "[t]his rule allows jurors to consider risks that were not, and could not have been, known to the manufacturer at the time of manufacture." *Id.* Our prior decision controls: this jury was not required to find that Pomona's injury was reasonably foreseeable in the 1930s and 1940s to find SQMNA liable.

SQMNA tries to distinguish *Pomona III*, arguing that *Pomona III* did not discuss bystander liability. To the extent this argument is distinguishable from the issue we addressed in *Pomona III*, it nonetheless fails because the jury could have found that Pomona was a foreseeable bystander because Pomona was "within the ambit of those entitled to protection from the risk created by the distribution and sale" of the defective fertilizer. *Johnson v. Standard Brands Paint Co.*, 79 Cal. Rptr. 194, 198 (Ct. App. 1969).

4. Finally, SQMNA contends that the damages award of $48,128,378 is excessive, warranting remittitur or a new trial. Pomona's damages expert testified

8

at trial that the total cost of perchlorate abatement would be $30,280,802—approximately $18 million less than what the jury awarded. In a diversity action, we apply state law to determine whether the damages award is excessive. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 438 n.22 (1996). Under California law, a damages award must be supported by sufficient evidence. *See Behr v. Redmond*, 123 Cal. Rptr. 3d 97, 111–12 (Ct. App. 2011), *as modified* (Mar. 25, 2011). A jury may award damages beyond those explicitly requested by the prevailing party so long as the award is supported by the evidence. *See J.P. v. Carlsbad Unified Sch. Dist.*, 181 Cal. Rptr. 3d 286, 304 (Ct. App. 2014). We must uphold the jury's damages award "whenever possible" and only interfere only if "the verdict is so out of line with reason that it shocks the conscience and necessarily implies that the verdict must have been the result of passion and prejudice." *Seffert v. Los Angeles Transit Lines*, 364 P.2d 337, 344 (Cal. 1961). Here, while we do not foreclose the jury's damages award, we vacate and remand because the district court's reasons for upholding the damages award are infirm.

In denying SQMNA's motion for remittitur or a new trial, the district court gave two reasons the jury could have awarded $48.1 million in damages: (1) Pomona's expert, Peter von Bucher, testified that his estimate was based on "very conservative assumptions," and (2) SQMNA's expert, Dr. Robert Trussell, testified that the annual cost of treating perchlorate by running Pomona's existing anion

exchange plants (AEPs)—AEP 1 and AEP 2—in "perchlorate mode" was $1,884,273, which would total more than $75 million over the 40-year period on which Von Bucher based his estimates. Neither of these justifications withstands scrutiny.

Von Bucher testified that his damages estimate was the "high end of the range of estimates that [he] prepared" based on "a number of very conservative assumptions that . . . will protect the City going into the future." This testimony suggests that Von Bucher's assumptions may have been "conservative" in that they resolved doubts in *favor* of Pomona, not against it. While Von Bucher's testimony supports a $30.2 million award, the district court's reasoning does not sufficiently justify how it supports the $48.1 million award.

The district court further erred in finding that Dr. Trussell, SQMNA's expert, offered a damages estimate far greater than the one offered by Pomona's expert. The $1,884,273 figure the district court relied upon represents the total cost of operating AEP 1 and 2 to treat perchlorate *and nitrate* (plus the cost of paying for AEP 3). Based on the jury's liability determination, SQMNA was liable for treating perchlorate, not nitrate; the district court should have considered the net cost of using AEP 1 and 2 to treat perchlorate over what it would cost to treat nitrate. Therefore, the district court erred in relying on a figure that represented treatment of both perchlorate and nitrate in justifying the jury's damages award.

10

Because the district court's reasoning for upholding the jury's damages award is not supported by the record, we are unable to evaluate whether the verdict was properly supported by the evidence as a whole, *see Behr*, 123 Cal. Rptr. 3d at 111–12 or "out of line with reason." *Seffert*, 364 P.2d at 344. We therefore conclude that the district court erred in its denial of SQMNA's motion for a new trial or remittitur with respect to damages. It is clear the evidence supports an award of $30.2 million, and we note Pomona offers theories to support the $48.1 million award that have not been addressed by the district court. But the district court did not provide reasons supported by the evidence to uphold the jury's damages award in denying SQMNA's motion for a new trial or remittitur. We believe the district court is in the best position to evaluate the evidence, and on remand, it may determine that the evidence supports the jury's award for reasons other than those the district court previously gave.

If the district court concludes the award is unsupported, it may order remittitur or a new trial. In the event that a new trial is necessary, we remind the district court that it may order a new trial limited to damages if it determines "the issue of damages is so distinct and independent of the others . . . that it can be separately tried." *Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 499 (1931). Because we find no error in the jury's liability determination, we suggest the district court consider this option. *See Wharf v. Burlington N. R.R. Co.*, 60

11

F.3d 631, 638 (9th Cir. 1995) (new trial limited to damages permitted when it would not "work injustice"); *see also Gasoline Prod. Co.*, 283 U.S. at 499 (where the verdict on a cause of action is free from error and is clearly distinct from the other issues, "it need not be disturbed.").

**VACATED and REMANDED.**